CIVIL ACTION NO. 17-225-DLB-HAI

EDGAR MORALES, et al.                                                    PETITIONERS


V.                          MEMORANDUM OPINION AND ORDER


JEFF SESSIONS, in his capacity as the
Attorney General of the United States, et al.                    RESPONDENTS

* * * * * * * * * * * * * * *

This matter is before the Court upon a Motion to Dismiss, wherein Respondents

seek dismissal of Petitioner Edgar Morales's petition for a writ of habeas corpus. (Doc. #

11). The Motion is fully briefed (Docs. # 13 and 14), and ripe for the Court's review. For

the reasons stated herein, Respondents' Motion to Dismiss is hereby **granted**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Edgar Morales is a native and citizen of Guatemala. (Doc. # 1 at 3). He unlawfully

entered the United States in January of 2006. (Doc. # 11-1). In March of 2006, an

immigration officer encountered Morales and charged that he was removable under the

Immigration and Nationality Act ("INA"). *Id.* After Morales was served with a Notice to

Appear ("NTA"), dated March 21, 2006, Morales signed a Stipulated Request for a

Removal Order and waived his right to a hearing before an Immigration Judge. (Doc. #

11-2). He agreed, in pertinent part, that: the factual allegations contained in the NTA

were true; that he was deportable/inadmissible as charged in the NTA; and that he did

not wish to apply for relief from removal. *Id.* The Stipulation, written in both English and

Spanish, set forth further acknowledgements, including that Morales had read the document, understood his rights and the consequences of the Stipulation, and that he was requesting removal voluntarily, knowingly, and intelligently. *Id.* An Immigration Judge granted the Stipulated Request and ordered Morales removed on March 24, 2006. (Doc. # 11-3). Morales did not seek review of the Stipulated Removal Order and was removed from the United States on March 29, 2006. (Doc. # 11-4).

Since his first removal in 2006, Morales has unlawfully reentered the United States five times. (Docs. # 11-4; 11-5; 11-6; 11-7; 11-8). Upon his apprehension by immigration officials the first four times, Morales was served with a Notice of Intent to Reinstate the March 2006 Stipulated Removal Order, declined to make a statement contesting the reinstatement determination, and was subsequently removed from the country. *Id.*

Most recently, Morales was apprehended by immigration officials in northern Kentucky.[1] (Doc. # 1 at 4). In the early morning hours of December 7, 2017, immigration officials situated themselves on Banklick Street in Covington, Kentucky, and conducted surveillance in an attempt to apprehend Morales. *Id.* When Morales's vehicle approached the residence, immigration officials stopped the car, but then discovered that Morales's wife—Aracelia DeLeon—was operating the vehicle. *Id.* The parties dispute the details of this encounter. While the Respondents claim that Aracelia DeLeon consented to the officers' entry into the home (Doc. # 11 at 4), the Petitioners claim that without consent, the officers obtained Aracelia DeLeon's keys to the residence and then

---

[1] According to the Record of Deportable Inadmissible Alien, during his time in the United States, Morales has amassed fifteen convictions, including convictions for public order crimes, traffic offenses, disorderly conduct, and illegal reentry. (Doc. # 11-9 at 2-3). Since his most recent unlawful reentry in February of 2012, Morales has been convicted of a public order crime, in addition to two driving-under-the-influence convictions. *Id.*

entered and searched the residence. (Doc. # 1 at 4-5). The conclusion of the encounter, however, is uncontested—officers located Morales in a bedroom with his four children, a scuffle ensued when the officers attempted to handcuff Morales, and after restraining him, the immigration officers took Morales into custody and removed him from his home. Morales has been continuously detained since December 7, 2017.

The following day—on December 8, 2017—an immigration officer reinstated Morales's 2006 Stipulated Removal Order. (Doc. # 11-8). Upon receiving the Notice of Intent/Decision to Reinstate Prior Order, Morales did not indicate whether he wished to make a statement contesting the reinstatement determination but noted that he "Refused To Sign" instead of signing his name. *Id.* On December 13, 2017, immigration officials transferred Morales to state custody for service of active bench warrants. (Doc. # 11-10 at 12). The following week—on December 22, 2017—the United States filed a federal criminal complaint against Morales. *United States v. Morales-Chun*, No. 2:18-cr-3-DLB-CJS (E.D. Ky. 2017) (Doc. # 1 therein). On January 11, 2018, a federal grand jury returned an Indictment against Morales, charging him with unlawfully re-entering the United States as a previously removed alien, in violation of 8 U.S.C. § 1326(a), (b)(1). *Id.* (Doc. # 6 therein). Morales was returned to the custody of the immigration officials on January 17, 2018. (Doc. # 11-10 at 12). And two days later—on January 19, 2018—the federal arrest warrant was executed and the United States Marshals took Morales into custody. *United States v. Morales-Chun*, No. 2:18-cr-3-DLB-CJS (E.D. Ky. 2017) (Doc. # 13 therein).

The instant action was filed on December 8, 2017—the same day that Morales's Stipulated Removal Order was reinstated. (Doc. # 1). Represented by counsel, the

Petitioners are purported to be: Edgar Morales, Aracelia DeLeon, and their four children. *Id.* Named as Respondents are: Jeff Sessions, in his capacity as the Attorney General of the United States; Kristjen Nielsen, in her capacity as Secretary of Homeland Security; and Robert M. Duncan, Jr.,[2] in his capacity as the United States Attorney for the Eastern District of Kentucky. The petition is styled as a "Petition for a Writ of Habeas Corpus and a Judicial Order for Release from Detention by the United States Department of Homeland Security" and asserts that the Court has jurisdiction under the habeas corpus statute, 28 U.S.C. § 2241, as well as federal-question jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* at 1-3. After setting forth the basis for the petition, Petitioners pray for the following six types of relief:

> 1. A Writ of Habeas Corpus pursuant to 28 U.S.C. [§] 2241 and upon a hearing on the said to issue a judicial order for [his] person be brought before this Honorable Court, and the production for a complete administrative record;
> 2. An Order of release from unlawful detention and for the termination of all proceeding [sic] to remove and deport Edgar Morales;
> 3. An [sic] declaratory judgment that the entry and search of Petitioner's and Aracelia DeLeon's home are violations of the Fourth Amendment to the United States Constitution;
> 4. A declaratory judgment that the arrest and detention are violations of the Fourth and Fifth Amendments to the United States Constitution;
> 5. A grant of all emergency relief that [the] court sees appropriate at law or equity;
> 6. All other relief at law and equity including costs and attorney fees.

*Id.* at 7-8.

On February 16, 2018, the Respondents filed a Motion to Dismiss the petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), arguing that the Court lacks subject-matter jurisdiction and that the petition fails to state a claim upon which relief

---

[2] Although the Petition names Carlton Shier as the representative for the United States Attorney's Office for the Eastern District of Kentucky, Robert M. Duncan, Jr. was sworn in as the United States Attorney for the Eastern District of Kentucky on November 21, 2017.

can be granted. (Doc. # 11). The Petitioners having filed their Response in opposition to the Motion (Doc. # 13), and Respondents having filed their Reply (Doc. # 14), the Motion to Dismiss is fully briefed and ripe for review.

## II.    ANALYSIS

### A.    Standards of Review

#### 1.    Dismissal for Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action for lack of subject-matter jurisdiction.[3] In a Rule 12(b)(1) motion, the plaintiff has the burden of proving that the Court has subject-matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). A motion under Rule 12(b)(1) can attack a complaint in two ways: facially and factually. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject-matter jurisdiction alleged by the complaint "merely questions the sufficiency of the pleading." *Id.* Thus, in reviewing a facial attack, the district court "takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* When a court reviews a factual attack on subject-matter jurisdiction, however, there is no presumption of truthfulness. *Id.* Instead, if the facts presented "give rise to a factual controversy, the district court must … weigh the conflicting evidence" to determine if subject-matter jurisdiction exists. *Id.* When resolving a factual attack, the district court "has wide discretion" to rely on affidavits or documents and can even conduct "a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

---

[3] Even when subject-matter jurisdiction is contested, the Court undoubtedly has the authority to determine whether it has jurisdiction. *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 552 (6th Cir. 2011) (holding that "the court has the 'adjudicatory power … to determine its own jurisdiction to deal further with the case'") (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 643-44 (2006)).

## 2.    Dismissal for Failure to State a Claim

For motions to dismiss, on the other hand, the familiar rules of 12(b)(6) apply.[4]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Put another way, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although "plaintiffs need not meet a 'probability requirement' … they must show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Wesley*, 779 F.3d at 427-28 (quoting *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011)).  "In ruling on the issue, a district court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'"  *Id.* at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th

---

[4]      Generally, motions to dismiss are not compatible with habeas corpus procedures.  *See Browder v. Dir., Dep't of Corrs. of Ill.*, 434 U.S. 257, 269 n.14 (1978) ("Respondent's conception … seems to have been that a Rule 12(b)(6) motion is an appropriate motion in a habeas corpus proceeding, and that upon denial of such a motion, the case should proceed through answer, discovery and trial.  This view is erroneous … The custodian's response to a habeas corpus petition is not like a motion to dismiss.  The procedure for responding to the application for a writ of habeas corpus … is set forth in the habeas corpus statutes and, under Rule 81(a)(2), takes precedence over the Federal Rules.").  That said, Rules 11 and 12 of the Rules Governing § 2254 Cases (which apply to habeas petitions under § 2241), and Federal Rule of Civil Procedure 81(a) permit the application of federal civil rules in habeas cases, "to the extent that they are not inconsistent" with any statutory provision or the Habeas Rules.  *See White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989); *Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002); *see also Williams v. Holloway*, No. 2:14-cv-2652-STA, 2016 WL 1058017, at *4 n.2 (W.D. Tenn. Mar. 14, 2016).  Moreover, 28 U.S.C. § 2243 authorizes federal courts to "dispose" of habeas corpus matters "as law and justice require."

[5]      "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Cir. 2007)).  After all, under Rule 12(b)(6), the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief."  *Id.*

### B.    The Removal and Reinstatement Process

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."  *Arizona v. United States*, 567 U.S. 387, 394 (2012).  The federal government has exercised that power and established an "extensive and complex" system of immigration enforcement.  *Id.* at 395.  Within that comprehensive scheme, "Congress has specified which aliens may be removed from the United States and the procedures for doing so."  *Id.* at 396.  "Aliens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law."  *Id.* (citing 8 U.S.C. § 1227).

"Removal is a civil, not criminal, matter" and a "principal feature of the removal system is the broad discretion exercised by immigration officials."  *Id.*  "Federal officials, as an initial matter, must decide whether it makes sense to pursue removal at all."  *Id.*  When removal is pursued, statutes and regulations dictate the details of the removal process.  If "an alien is suspected of being removable, a federal official issues an administrative document called a 'Notice to Appear.'"  *Id.* at 407.  "The form does not authorize an arrest"; instead, "[t]he federal statutory structure instructs when it is appropriate to arrest an alien during the removal process."  *Id.*  "For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention, 'pending a decision on whether the alien is to be removed from the United States.'"  *Id.* (quoting 8 U.S.C. § 1226(a)).  "And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant."  *Id.* at 408 (citing 8 C.F.R. § 241.2(a)(1)).  "If no

federal warrant has been issued, those officers have more limited authority." *Id.* (citing 8 U.S.C. § 1357(a)). Without a warrant, the officer "may arrest an alien for being 'in the United States in violation of any immigration law or regulation, for example, but only where the alien is 'likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (internal alterations omitted).

After an arrest, immigration officers' attention turns toward detention. "When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). When the 90-day period begins to run depends on the alien's status. 8 U.S.C. § 1231(a)(1)(B). Typically, the "removal period begins on the latest" of either: (i) the date the order of removal becomes administratively final or (ii) the date of the court's final order if the removal order is judicially reviewed and removal is stayed during the pendency of such review. 8 U.S.C. § 1321(a)(1)(B)(i)-(ii). But, if the "alien is detained or confined" pursuant to criminal process," the 90-day removal period does not begin until the "alien is released from detention or confinement." 8 U.S.C. § 1321(a)(1)(B)(iii).

If an alien unlawfully reenters the United States after having been removed, like the situation presented here, a different procedure—reinstatement, rather than removal—applies:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after reentry.

8 U.S.C. § 1231(a)(5).  Under this provision, Congress established "a process to remove [the alien] under the prior order at any time after the reentry" and removal is virtually automatic.  *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44 (2006).  Thus, the reinstatement process and the removal process have important and intentional differences.

First, the reinstatement regulations provide that the alien "has no right to a hearing before an immigration judge."  8 C.F.R. § 241.8(a).  "To find that an alien is subject to removal through reinstatement, the immigration officer must determine: (1) that the alien has been subject to a prior order of removal; (2) that the alien is in fact an alien who was previously removed or who departed voluntarily; and (3) that the alien unlawfully re-entered the United States."  *Villegas de la Paz v. Holder*, 640 F.3d 650, 655 (6th Cir. 2010) (citing 8 C.F.R. § 241.8(a)(1)-(3)).

"If an officer determines that an alien it subject to removal" through reinstatement, the officer "shall provide the alien with written notice of [the] determination."  8 C.F.R. § 241.8(b).  The officer must then "advise the alien that he or she may make a written or oral statement contesting the determination," and if the "alien wishes to make such a statement, the officer" must "allow the alien to do so and" then "consider whether the alien's statement warrants reconsideration of the determination."  *Id.*  If not, "the alien shall be removed under the previous order of exclusion, deportation, or removal."  8 C.F.R. § 241.8(c).  "When reinstating a prior removal order in illegal reentry cases, [the Department of Homeland Security] does not reissue the prior order (which would restart the 30-day period within which the alien may file a petition for review) but reinstates the prior order 'from its original date.'"  *Juarez-Chavez v. Holder*, 515 F. App'x 463, 466 (6th

Cir. 2013) (citing 8 U.S.C. § 1231(a)(5)). Once the reinstatement determination becomes final, the 90-day period for removal commences. 8 U.S.C. § 1231(a)(1)(B).

### C. The Court is without jurisdiction to terminate the removal and deportation proceedings against Morales.

"[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts" to hear a petition for a writ of habeas corpus." *Zadvydas*, 533 U.S. at 687 (citing 28 U.S.C. § 2241(a)). And, § 2241(c)(3) provides "an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)(3)).

In the immigration context, however, Congress has divested district courts of subject-matter jurisdiction to review orders of removal. Instead, pursuant to the REAL ID Act of 2005, 8 U.S.C. § 1252, the United States Courts of Appeals have exclusive jurisdiction to review an order of removal:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter…

8 U.S.C. § 1252(a)(5). Thus, Congress has "eliminated a habeas petition as a means for judicial review of a removal order," and the sole method for obtaining review of a removal order is by filing a petition for review in the appropriate Court of Appeals.[6] *Jaber v. Gonzales*, 486 F.3d 223, 230 (6th Cir. 2007).

---

[6]     Before review may be sought in the appropriate Court of Appeals, the alien must exhaust "all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *Suarez-Diaz v. Holder*, 771 F.3d 935, 941 (6th Cir. 2014).

Even when judicial review of an order of removal is possible in the Courts of Appeals, Congress has carved out certain decisions and actions by the Attorney General that are insulated from judicial review:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This provision protects from judicial review "three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999). Therefore, the "initiation and prosecution of various stages in the deportation process are within the Attorney General's discretion and not subject to judicial review." *Ene v. Phillips*, 99 F. App'x 642, 643 (6th Cir. 2004) (citing *AADC*, 525 U.S. at 483).

Another section of the REAL ID Act, described by the Supreme Court as the "unmistakable zipper clause," *AADC*, 525 U.S. at 483, contains an even broader jurisdictional limitation for review of the legality of final orders of removal:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  "By its terms, [this] provision aims to consolidate all questions of law and fact that arise from either an action or a proceeding brought in connection with the removal of an alien."  *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) (citing *Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007)).  Thus, "§ 1252(b)(9) 'is a judicial channeling provision," which funnels all questions of law and fact arising from removal proceedings into the appropriate Court of Appeals, while § 1252(g) is "'a claim-barring one.'" *Id.* (quoting *Aguilar*, 510 F.3d at 11).

Together, § 1252(a)(5), (b)(9), and (g) establish the exclusive route and the boundaries for judicial review of orders of removal.[7]  If an alien properly exhausts his administrative remedies, he can seek review of the order of removal in the appropriate Court of Appeals.[8]  Notwithstanding the limited jurisdiction granted to the circuit courts to review orders of removal, "§ 1252(a)(2)(D) restores jurisdiction to the circuit courts to review constitutional claims and questions of law raised in a petition for review of a removal order."  *Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009).  And the same sort of review applies for reinstated orders of removal.  *Ovalle-Ruiz v. Holder*, 591 F. App'x 397, 400 (6th Cir. 2014) (the circuit courts "have jurisdiction to review final orders of removal," and they "treat reinstatement orders the same as removal orders for purposes of" jurisdiction).  Although a "prior order of removal is reinstated from its original

---

[7]    Despite Petitioners' claim that "habeas corpus is alive and available," (Doc. # 13 at 4-5), the Sixth Circuit has held that the petition-for-review process in the Court of Appeals "provides an adequate and effective process to review final orders of removal, and thus the elimination of habeas relief does not violate the Suspension Clause."  *Muka v. Baker*, 559 F.3d 480, 485 (6th Cir. 2009).

[8]    "Additionally, the scope of [the Court of Appeal's] review is limited to 'the administrative record on which the order of removal is based,' and the standard by which" the Court of Appeals conducts its review "is as follows: 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Suarez-Diaz*, 771 F.3d at 941 (citing 8 U.S.C. § 1252(b)(4)).

date and is not subject to being reopened or reviewed," the Sixth Circuit has held that "§ 1252(a)(2)(D) re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings." *Villegas de la Paz*, 640 F.3d at 656.

District courts, however, do not have jurisdiction to review an order of removal or a reinstated order of removal. Nor do district courts have jurisdiction over "questions of law and fact that arise from either an action or a proceeding brought in connection with the removal of an alien." *Hamdi*, 620 F.3d at 626. Thus, Petitioners' § 2241 petition, which seeks an "order of release from unlawful detention and for the termination of all proceeding[s] to remove and deport Edgar Morales," requests relief that this Court is simply without jurisdiction to grant.

### D. Morales's detention is not unlawful, and thus, habeas affords him no relief.

Petitioners' habeas petition also seeks Morales's release from his alleged "unlawful detention." (Doc. # 1 at 7). In their Motion to Dismiss, Respondents argue that the Court lacks jurisdiction over the unlawful-detention claim because Morales is "no longer in ICE custody" and further assert that the Petition fails to state a claim upon which relief can be granted because Morales is detained pursuant to criminal process, and thus the 90-day removal period has not yet begun. (Doc. # 11 at 7). In response, Petitioners claim only that the "transfer" of Morales's "person from one agency to another does not negate the fact that his liberty has been abridged under [the] authority of federal officers." (Doc. # 13 at 3).

As outlined above, "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily

secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. Beyond that initial 90-day period, further detention is permissible if authorized by statute. *Id.*; 8 U.S.C. § 1231(a)(6).

Despite the elimination of "a habeas petition as a means for judicial review of a removal order" and the curtailment of district courts' jurisdiction in the immigration context, *Jaber*, 486 F.3d at 230, the United States Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. Thus, although post-removal detention can extend beyond the original 90-day period "to a period reasonably necessary to bring about that alien's removal from the United States," "indefinite detention" is not permitted and "would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 689-90.

But, without determining when the 90-day period commences, the 90-day timeline and the availability of habeas proceedings mean little. Typically, the "removal period begins on the latest" of either: (i) the date the order of removal becomes administratively final, or (ii) the date of the court's final order if the removal order is judicially reviewed and removal is stayed during the pendency of such review. 8 U.S.C. § 1321(a)(1)(B)(i)-(ii). But, if the "alien is detained or confined" pursuant to criminal process, the 90-day removal period does not begin until the "alien is released from detention or confinement." 8 U.S.C. § 1321(a)(1)(B)(iii). Moreover, when "detention is ordered in a criminal proceeding with adequate procedural protections," there is no violation of the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

Morales is detained pursuant to criminal process. In fact, on March 12, 2018, Morales pled guilty and admitted that he had unlawfully re-entered the United States as a previously removed alien, in violation of 8 U.S.C. § 1326.[9] *United States v. Morales-Chun*, No. 2:18-cr-3-DLB-CJS (E.D. Ky. 2017) (Doc. # 28 therein). And on July 19, 2018, Morales was sentenced to a fifteen-month term of imprisonment. *Id.* (Doc. # 38 therein). Accordingly, the 90-day removal period will not commence until Morales is released from detention or confinement, and Morales's continued detention does not violate the Due Process Clause of the Fifth Amendment.

Petitioners' allegations of an unlawful, warrantless arrest do not change this result. First, Petitioners' claim that the warrantless arrest was unlawful "arises" from the Government's decision or action to reinstate the 2006 Stipulated Removal Order. And, 8 U.S.C. § 1252(g) deprives this Court of jurisdiction over such a claim. *See Kareva v. United States*, 9 F. Supp. 3d 838, 845 (S.D. Ohio 2014). Furthermore, while the "general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated," the "mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040-41 (1984). Again, the removal of an alien "is a civil, not criminal, matter." *Arizona*, 567 U.S. at 396. Therefore, Petitioners' § 2241 petition, which asks the Court to "release" Morales from his "unlawful detention" and seeks a "declaratory judgment that" Morales's "arrest and detention" constitute "violations of the Fourth and Fifth

---

[9] Although the Sixth Circuit has indicated that the Government "invites judicial scrutiny of any underlying removal order under § 1326" by charging the alien with the violation of a crime, an element of which is a valid prior removal order, Morales elected not to challenge his 2006 Stipulated Removal Order in the criminal matter.

Amendments" (Doc. # 1 at 7), requests relief this Court is without jurisdiction to grant and fails to state a claim that warrants habeas relief.

**E.    Petitioners' other claims regarding an allegedly unlawful entry and search of the home do not give rise to habeas relief.**

The Petitioners' habeas petition also seeks a "declaratory judgment that the entry and search of" Morales and De Leon's home violated the Fourth Amendment.  (Doc. # 1 at 7).  Respondents contend that the Petitioners' requests for declaratory relief must be dismissed for lack of subject-matter jurisdiction.   (Doc. # 11 at 12).   Specifically, Respondents claim that Petitioners have alleged nothing more than "past exposure to illegal conduct … unaccompanied by any continuing present adverse effects," which is insufficient to "establish a present case or controversy" and obtain a declaratory judgment.  *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  In response, Petitioners argue that "[w]ithout a final opinion from this court, Defendants … are apt to repeat the violations set forth in this action."  (Doc. # 13 at 3).

Respondents' jurisdictional concerns are well-taken.   The Constitution restricts judicial power "to redress[ing] or prevent[ing] actual or imminently threatened injury to persons caused by private or official violation of law."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  "The doctrine of standing is one of several doctrines that reflect this fundamental limitation."  *Id.* at 493.  "It requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'"  *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Therefore, Petitioners "bear[ ] the burden of showing that [they have] standing for each type of relief sought."  *Id.*

"In the context of claims for injunctive or declaratory relief, 'a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized,' and that 'threat must be actual and imminent, not conjectural or hypothetical.'" *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017) (quoting *Summers*, 555 U.S. at 493). "'Past exposure to illegal conduct … unaccompanied by any continuing, present adverse effects,' will not suffice to establish 'a present case or controversy.'" *Id.* (quoting *Lyons*, 461 U.S. at 102). "Yet, 'past exposure to illegal conduct' is precisely what [Petitioners] allege here." *Id.*

Petitioners claim that immigration officers unlawfully entered and searched their home. But, the immigration officials that allegedly entered and searched Morales and DeLeon's residence without consent did so over seven months ago. Therefore, Petitioners lack standing to seek a declaratory judgment, and any injury sustained is now moot. Although Petitioners attempt to circumvent these justiciability issues by suggesting that the Defendants "are apt to repeat" the alleged constitutional violations, the Petitioners' speculation is insufficient to fit their suit into the exception for cases that are "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). First, "that exception cannot cure lack of standing." *Sumpter*, 868 F.3d at 491. Second, "even in the mootness context, it only applies when 'there is a reasonable expectation that *the same complaining party* will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). While Respondents will undoubtedly continue to enforce the immigration laws, there is no demonstrated probability that Respondents intend to return and unlawfully enter Morales and DeLeon's

residence anytime soon. Therefore, Petitioners have failed to establish that they are entitled to declaratory relief.[10]

Moreover, even assuming Petitioners had standing and their claim was not moot, it is far from clear that the Court would have jurisdiction to entertain—or provide a remedy for—Petitioners' claim that the immigration officers' entry and search of Morales and DeLeon's residence violated the Fourth Amendment. "The Real ID Act's limitation on district court jurisdiction applies to both direct and indirect challenges to orders of removal." *Ametaj v. Napolitano*, No. 09-cv-13417, 2009 WL 3012403, at *2 (E.D. Mich. Sept. 17, 2009) (citing *Nwankoso v. Dep't of Homeland Sec.*, No. 9:06-cv-98, 2006 WL 212368, at *1 (N.D.N.Y. Jan. 25, 2006)). Thus, if the Petition, stripped of legal labels, is nothing more than a challenge to the decision that Morales be removed from the United States, this Court does not have jurisdiction to entertain Petitioners' claims.

The Sixth Circuit, however, has directed courts to "be cautious … not to interpret broadly jurisdiction-stripping provisions in the absence of explicit congressional intent." *Hamdi*, 620 F.3d at 622. As a result, the Sixth Circuit has held that "a complaint brought by a U.S. citizen child who asserts his or her own distinct constitutional rights and separate injury does not fall fairly within the 'on behalf of any alien' jurisdictional bar in § 1252(g)." *Id.* at 623. That said, whether such a complaint states a claim upon which relief can be granted is an entirely separate matter. Thus, "[e]ven though … § 1252(b)(9) does not bar" those claims "from proceeding under general federal-question subject-matter jurisdiction, [the Court] must still consider the district court's ability to grant the remedy

---

[10] That officers may have unlawfully entered and searched Morales and DeLeon's home, "while presumably affording them standing to claim damages against the individual officers and perhaps against the" government entity, "does nothing to establish a real and immediate threat" that officers would again enter and search the residence. *Lyons*, 461 U.S. at 105.

requested." *Id.* at 627-28. If the requested relief "is that the federal district court should review" the order of removal "and, taking proper account of [the plaintiffs'] constitutional rights, cancel that removal order," the Petition fails to state a claim upon which relief can be granted because the requested relief would "run afoul of current precedent interpreting § 1252(b)(9)," which prohibits federal district courts from reviewing and vacating a removal order. *Id.* at 629. Therefore, Petitioners' § 2241 petition, which merely seeks habeas relief from Morales's removal order and declaratory relief for past exposure to illegal conduct, must be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.[11]

## III.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    Respondent's Motion to Dismiss (Doc. # 11) is **granted**;

(2)    Petitioners' Petition for a Writ of Habeas Corpus and a Judicial Order for Release from Detention (Doc. # 1) is **dismissed**;

(3)    This action is **dismissed** and **stricken** from the Court's active docket.

This 6th day of August, 2018.



Signed By:

*David L. Bunning*

United States District Judge

---

[11]    Although there are conceivable claims that Petitioners could have brought that would permit them to seek recompense for alleged constitutional violations—like a *Bivens* claim perhaps—Petitioners, who are represented by counsel, chose to style their action as a habeas proceeding and requested only habeas and declaratory relief. Therefore, despite Petitioners' request that the Court "liberally construe" their petition (Doc. # 13 at 2), the Court will not conjure allegations or construct claims on Petitioners' behalf.